⑦

FILED

JUL 2 1 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Case No. 05-40218 |
| | ) | Docket Control No.: none |
| LEO GONSALVES, | ) | |
| WENDY GONSALVES, | ) | Date: July 6, 2006 |
| | ) | Time: 1:00 pm |
| Debtors. | ) | Dept. D |
| | ) | |

## **MEMORANDUM DECISION**

Drive Financial Services LP (the "Creditor") has objected to the Chapter 13 Plan filed on March 28, 2006 (the "Plan") proposed by Leo and Wendy Gonsalves (the "Debtors"), on grounds that (1) the Plan was proposed in bad faith, (2) the interest rate proposed in the Plan for the Creditor's secured claim is too low, and (3) the collateral value proposed in the Plan is too low. The Creditor's objection applies specifically to the inclusion of a claim in the Plan for debt incurred to the Creditor after the Debtors had filed a chapter 7 petition but prior to converting their case to chapter 13.

For the reasons set forth below, the court will confirm the Plan and will overrule the Creditor's objection to confirmation.

## **I. MATERIAL FACTS**

The record in this case shows that the Debtors filed a petition for chapter 7 relief on October 15, 2005, before the general effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act. At that time, the Debtors did not have bankruptcy counsel. On February 25, 2006, approximately four months after filing their chapter 7 petition, the Debtors entered into a Retail Installment Sale Contract Simple Interest Finance Charge (the "Contract") through Golden State Mitsubishi-Suzuki (the "Dealership"). The Contract provides for a security interest in a 2004 Pontiac Bonneville (the "Vehicle"). Rights under the Contract, including the security interest, were subsequently assigned to the Creditor.

69

The Debtors obtained counsel for the first time with regards to their bankruptcy proceeding on March 25, 2006, after the United States Trustee filed a § 707(b) motion ("UST's Motion") and the court entered a conditional order of dismissal.  Rather than having their chapter 7 case dismissed and then filing a chapter 13 case, the Debtors filed a motion to convert their chapter 7 case to chapter 13.

The Contract price for the Vehicle is $15,856.62 and the interest rate set forth in the Contract is 24.99% per annum.  The Plan values the Vehicle at $12,009.00 and provides for an interest rate of 8% per annum on the Creditor's secured claim.

## II. ANALYSIS

The issues in this case are: (1) whether the Plan was proposed in bad faith, (2) whether the interest rate proposed by the Plan is appropriate, and (3) whether the Plan appropriately values the Vehicle.

### A.     Good Faith

In determining whether a debtor has filed a chapter 13 plan in good faith, courts must look to the totality of the circumstances.  In re Ho, 274 B.R. 867, 876 (B.A.P. 9th Cir. 2002) (quoting In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994)).  When taking this approach, courts are unlikely to find bad faith unless there is strong evidence supporting such a finding.  See In re Metz, 820 F.2d 1495 (9th Cir. 1987) (holding that the debtor's chapter 13 plan was not filed in bad faith notwithstanding the fact that it provided for no payment to unsecured creditors); In re Smith, 286 F.3d 461 (7th Cir. 2002) (availing oneself to the more liberal provisions of chapter 13 to discharge a debt that was not dischargeable under chapter 7 is not alone sufficient to constitute bad faith, and the payout of less than ten percent of the debt under the chapter 13 plan, while a red flag, was not proof of bad faith); In re Young, 237 F.3d 1168 (10th Cir. 2001) (holding that the debtor's post-petition purchase of a luxury car did not compel a finding of bad faith because there was ample evidence that the chapter 13 plan was not filed for the purpose of evading that debt).

- 2 -

1    The Creditor argues that the Debtors entered into the Contract while in chapter 7, with the

2    intent of converting the case to chapter 13 in order to undervalue the collateral and cram down

3    the interest rate that is provided in the Contract.

4    The Creditor offered no tangible evidence of the Debtors' intent at the time of entering

5    into the Contract, but instead invites the court to infer an improper purpose from the timing of

6    events.  The Debtors allege that they advised the Dealership of their pending chapter 7 case, but

7    offer no declaration in support of that allegation.  Thus, neither party has offered specific

8    evidence to show intent.  The court does note however, that the Debtors did not retain counsel

9    until roughly one month after purchasing the Vehicle.  It is unlikely that the Debtors, without

10   counsel at the time of entering into the Contract, were intending to convert their case to chapter

11   13 after purchasing the Vehicle.  This observation is supported by the fact that the Debtors

12   converted their chapter 7 case to chapter 13 while facing a possible dismissal due to the UST's

13   Motion.  Facing the dismissal of their case is a more likely source of motivation for the Debtors'

14   conversion than some deliberate scheme that they hatched prior to retaining legal counsel.

15   In In re Street, 55 B.R. 763, 764-65 (Bankr. N.D. Cal. 1985), the court found no bad faith

16   in the debtor's proposed chapter 13 plan even though he converted after a court determined that

17   one of his debts was nondischargeable under chapter 7.  Like the debtor in Street, the Debtors in

18   this case have converted their case from chapter 7 to chapter 13 and are attempting to include a

19   debt in the Plan that would not have been eligible for discharge in the chapter 7 case.  Unlike the

20   debtor in Street however, the Debtors in the present case are not trying to include a debt that has

21   been expressly judged to be generally nondischargeable under chapter 7.  The Debtors are merely

22   attempting to include a regular consumer-type debt in the Plan.  Since the court found no bad

23   faith in Street, it logically follows that no bad faith exists in the present case.

24   Furthermore, the Supreme Court has held that a debtor may file chapter 7 and chapter 13

25   petitions sequentially.  Johnson v. Home State Bank, 501 U.S. 78, 87 (1991).  Accordingly, if the

26   Debtors had chosen to let their chapter 7 case run its course and subsequently file a chapter 13

27   petition, then there appears to be little doubt that the debt incurred with the Creditor could be

28

- 3 -

1  properly included in the Plan.  The Debtors have merely chosen to simplify the process by

2  converting directly to chapter 13.

3          Based on the foregoing analysis, the court finds that the Creditor has not introduced

4  evidence into the record that is sufficient to demonstrate that the Debtors acted in bad faith by

5  including the debt incurred through the purchase of the Vehicle in the Plan.  Rather, the logical

6  inference is that the conversion was motivated by the UST's Motion.

7

8  **B.      Proposed Interest Rate**

9          The Creditor next contends that the interest rate proposed by the Plan is inappropriate.  In

10  chapter 13 cases, the appropriate interest rate should generally be determined by first looking to

11  the national prime rate, reported daily in the press, and then adjusting that rate for the risk of

12  default.  Till v. SCS Credit Corp., 541 U.S. 465, 478-79 (2004).  It should also be noted that

13  "starting from a concededly low estimate and adjusting upward places the evidentiary burden

14  [regarding the risk adjustment] squarely on the creditors."  Id. (emphasis added).

15          The record indicates that the national prime rate was 6.5% at the time of the conversion

16  from chapter 7 to chapter 13.  The Plan proposes a 1.5% adjustment to add to the prime rate in

17  order to account for the risk of default, creating a total rate of 8% per annum.  The Creditor

18  asserts that the 8% interest rate proposed is too low and that the appropriate rate is 24.99% per

19  annum, the original rate stated in the Contract.  However, the Creditor has introduced nothing

20  into the record to refute either (1) that 6.5% is the appropriate prime rate to be used in the Plan, or

21  (2) that 1.5% is an appropriate adjustment to account for the risk of default.  Therefore, under the

22  reasoning set forth in Till, the Creditor has not met its evidentiary burden in a manner that

23  warrants an upward adjustment of the interest rate proposed in the Plan.  See id.

24

25  **C.      Value of Collateral**

26          In cases such as the present one, where the debtor has invoked the cram down power, the

27  value of a security interest held by a creditor is most adequately determined by the replacement-

28  value standard.  Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 965 n.6 (1997).  The

- 4 -

1    replacement-value is the cost the debtor would incur to obtain a like asset for the same purpose.

2    Id. at 965.

3        The valuation of the Vehicle in the Plan is based on the Kelley Blue Book

4    (www.kbb.com) "private party" value, which is what a buyer can expect to pay when buying a

5    used car from a private party.  See

6    www.kbb.com/kb/ki.dll/ke.kb.sp?kbb;;CA067;&95610&&usedCars:slp& (page to input criteria

7    for trade-in, retail, or private party values).  The Kelley Blue Book value also adjusts the

8    estimated value of vehicles depending on whether they are in "excellent," "good," or "fair"

9    condition.  The Debtors' valuation of $12,009.00 is based on the allegation that the Vehicle is in

10   "fair" condition.  This allegation remained undisputed by the Creditor.

11       Meanwhile, the Creditor proposes a $14,775.00 minimum valuation of the Vehicle, which

12   is based on a N.A.D.A. Official Used Car Guide (www.nada.com) report.  The N.A.D.A. report

13   provides the estimated *retail* value of the Vehicle.  However, the N.A.D.A. retail value may not

14   be properly indicative of the replacement-value in this case, because it fails to state the condition

15   of the car which it is evaluating.  Furthermore, due to the negotiable nature of vehicle prices,

16   retail values are generally higher than what a consumer would expect to actually pay for a used

17   vehicle, which means that the N.A.D.A. estimated retail value submitted by the Creditor likely

18   overestimates the replacement-value of the Vehicle.

19       The other valuation of $15,056.80 proposed by the Creditor is even higher than the

20   N.A.D.A. estimate, which means it likely overstates the replacement-value of the Vehicle as well.

21   In support this higher valuation, the Creditor offers itself as an expert on the subject of vehicle

22   valuation.  However, the Creditor is not an unbiased party in this case, so its expert opinion is

23   weighed accordingly.  See United States v. Fell, 372 F. Supp. 2d 786, 790 (D. Vt. 2005) ("Expert

24   witness testimony should be judged for credibility and bias on the same basis as other testimony."

25   (citing Sartor v. Ark. Natural Gas Corp., 321 U.S. 620, 627-28 (1944))).

26       Of the various methods of valuation proposed, the methodology used by the Kelley Blue

27   Book is most conducive to producing an accurate estimate of the Vehicle's replacement-value.

28   Thus, the Debtors' proposed valuation of $12,009.00 is accepted by the court.  The court

                                        - 5 -

therefore finds that the Plan's treatment of the Creditor's secured claim satisfies 11 U.S.C. §1325(a)(5) and (b)(1).

### III.  CONCLUSION

The record demonstrates that the Debtors filed the Plan in good faith.  Further, the court finds that the proposed interest rate and value of collateral in the Plan satisfy the statutory requirements under the circumstances of this case.  Accordingly, the Debtors' Chapter 13 Plan will be confirmed and the Creditor's objection to the plan confirmation will be overruled.  The court will issue an order consistent with this memorandum.

Dated: July 21, 2006

*Robert Bardwil*

ROBERT S. BARDWIL
United States Bankruptcy Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Certificate of Service

I certify that on ___JUL 21 2006___ a copy of the **foregoing document** was mailed to the following:

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1858

Peter Macaluso
910 Florin Rd., #111
Sacramento, CA 95831

Robert Curtis
Curtis Law Group
19700 Fairchild Rd., Suite 380
Irvine, CA 92612

FOR THE COURT
RICHARD G. HELTZEL
CLERK, U.S. BANKRUPTCY COURT

By: _____
          Deputy Clerk